# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | |
|---|---|
| **WILBERT FRANK MIDDLETON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | )     **No. 2:20-cv-02015-TLP-atc** |
| **VOIGT & SCHWEITZER LLC,** | ) |
| **MEMPHIS GALVANIZING,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

Before the Court are Defendant V&S Memphis Galvanizing, LLC's ("Defendant" or "V&S Memphis")[1] Motion to Dismiss, filed on September 14, 2020 (ECF No. 31), and Motion for Summary Judgment, filed on February 23, 2021 (ECF No. 45).[2] *Pro Se* Plaintiff Wilbert Frank Middleton failed to timely respond to the Motion to Dismiss and was ordered to show cause by November 5, 2020, as to why the Motion to Dismiss should not be granted. Plaintiff failed to meet this deadline. Plaintiff subsequently served his Response to the Motion to Dismiss on Defendant on November 23, 2020, and eventually filed his Response with the Court on December 18, 2020. (ECF No. 41.) Despite Plaintiff's failure to timely serve and file his Response to the Motion to Dismiss, the Court will consider Plaintiff's Response. Plaintiff timely filed his Response to the Motion for Summary Judgment on March 22, 2021. (ECF No. 48.)

---

[1] According to V&S Memphis, it was incorrectly named as Voigt & Schweitzer LLC, Memphis Galvanizing in the Complaint.

[2] Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

Defendant filed its Reply to Plaintiff's Response to the Motion for Summary Judgment on April

6, 2021. (ECF No. 49.) For the following reasons, it is recommended that Defendant's Motion

to Dismiss and Motion for Summary Judgment be granted.

## PROPOSED FINDINGS OF FACT

### I.    Undisputed Material Facts Relating to the Motion for Summary Judgment

As a threshold matter, the Court must address which facts are undisputed for purposes of

ruling on the Motion for Summary Judgment. Contemporaneous with the Motion and the

accompanying memorandum (ECF No. 45-2), Defendant filed a statement of sixty-eight

undisputed material facts ("Defendant's Facts") (ECF No. 45-1). Defendant's Facts are

supported by the declarations of Defendant's employees Tammy Kinsey, William Martin, and

Thomas Ness (ECF Nos. 45-3, 45-4, 45-5), as well as excerpts and exhibits from Plaintiff's

deposition (ECF No. 45-6).

In his Response (ECF No. 48), Plaintiff fails to offer any facts or evidence in the record

to refute or dispute those offered by Defendant. Plaintiff generally argues that Defendant's Facts

are "hearsay statements offered by the opposing attorney" and that "Defendants offer no

evidence of testimony under oath by way of depositions, declarations, or sworn statements to

disprove any of the facts alleged in Plaintiff's Complaint." (*Id.* at 2.) Plaintiff's arguments miss

the mark. Federal Rule of Civil Procedure 56(c)(4) provides that "[a]n affidavit or declaration

used to support or oppose a motion must be made on personal knowledge, set out facts that

would be admissible in evidence, and show that the affiant or declarant is competent to testify on

the matters stated." Defendant's Facts are supported by Plaintiff's deposition testimony and by

declarations that comply with the rules set forth in 28 U.S.C. § 1746 governing unsworn

declarations under penalty of perjury. Defendant's Facts are thus consistent with Rule 56(c)(4)

and will be considered in ruling on the Motion for Summary Judgment. *See Haywood v. Brennan*, No. 2:18-cv-02473-MSN-cgc, 2020 WL 7480807, at *5 n.7 (W.D. Tenn. Dec. 18, 2020) (discussing how courts may rely on "unsworn, signed declarations as evidence in deciding motions for summary judgment under Rule 56 if the declaration is: 1) in writing, 2) dated, and 3) verifies that its content is 'true under penalty of perjury'") (citing *Vanguard Transp. Sys., Inc. v. Volvo Trucks of N. Am., Inc.*, No. 2:04-cv-889, 2006 WL 2373273, at *6 (S.D. Ohio Aug. 14, 2006)); *see also Pollock v. Pollock*, 154 F.3d 601, 611 n.20 (6th Cir. 1998) (noting the statutory exemption under 28 U.S.C. § 1746 that "permits an unsworn declaration to substitute for a conventional affidavit if the statement contained in the declaration is made under penalty of perjury, certified as true and correct, dated, and signed").

Because Plaintiff has only argued that Defendant's Facts are invalid and has failed to offer any facts of his own based on record evidence, he has failed to properly dispute any of the facts presented in Defendant's Facts. *See Elvis Presley Enter. v. City of Memphis, Tenn.*, No. 2:18-cv-2718-SHM-atc, 2020 WL 6163564, at *3 (W.D. Tenn. Oct. 21, 2020) (explaining that, when responding to a properly supported summary judgment motion, "[t]he non-moving party has the duty to point out specific evidence sufficient to justify a jury decision in its favor") (citing Fed. R. Civ. P. 56(c)(1); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)); *see also* Local Rule 56.1(b) ("Each disputed fact must be supported by specific citation to the record."); Local Rule 56.1(d) ("Failure to respond to a moving party's statement of material facts . . . within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment.").

As a result, Defendant's Facts are undisputed for purposes of ruling on the Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(e) (providing that, if a party fails to properly address

an assertion of fact, the court can consider the fact undisputed for purposes of the motion); s*ee*

*also Sanders v. Baptist Mem'l Hosp.*, No. 14-cv-2414-SHL-tmp, 2015 WL 5797607, at *1 (W.D.

Tenn. Aug. 19, 2015), *report and recommendation adopted*, 2015 WL 5797618 (W.D. Tenn.

Oct. 1, 2015), *aff'd*, No. 15-6136 (6th Cir. Apr. 11, 2016) (collecting cases in which courts in

this district deemed facts undisputed when plaintiffs failed to respond to them consistent with

Local Rule 56.1(b)).

Plaintiff's assertion that none of the declarants relied upon in Defendant's Facts have

been deposed is of no consequence. (ECF No. 48, at 2.) Discovery in this case closed on

January 23, 2021, and the time for Plaintiff to gather information to refute Defendant's proof has

passed. (ECF No. 27.) To the extent Plaintiff has failed to demonstrate a dispute with

Defendant's Facts because he lacks sufficient information to do so, those facts are deemed

undisputed. *See Baxter Bailey Invs., Inc. v. Mars Petcare US, Inc.*, No. 11-cv-2860-STA-dkv,

2012 WL 1965612, at *1 n.1, *2–3 (W.D. Tenn. May 31, 2012) (denying the plaintiff's motion

for additional discovery and deeming certain facts admitted when the plaintiff claimed he lacked

sufficient information to respond but discovery had closed); *Dodd v. Chrysler Grp. LLC*, No.

1:11-cv-01073-JDB, 2012 WL 1565640, at *2 nn.2–3 (W.D. Tenn. May 1, 2012) (deeming

certain facts admitted for the purposes of summary judgment after the plaintiff asserted that he

was "without sufficient information to admit or deny" them); *Doe v. Belmont Univ.*, 367 F. Supp.

3d 732, 747 n.13 (M.D. Tenn. 2019), *case dismissed*, No. 19-5369, 2019 WL 5079251 (6th Cir.

Sept. 18, 2019) (accepting as undisputed those facts that were objectively verifiable, despite the

plaintiff's assertion that he lacked sufficient information to assess their truth but made no attempt

to offer contrary evidence).

Given the foregoing, the Court finds the following facts are undisputed for purposes of

the Motion for Summary Judgment:

Defendant operates a hot-dip galvanizing facility in Millington, Tennessee (the

"Millington Plant"); is registered to do business in the State of Tennessee; and is a limited

liability company organized under the laws of the state of Ohio with its principal place of

business in Columbus, Ohio.  (ECF No. 45-1 ¶¶ 1–2.)  Voigt & Schweitzer, LLC ("V&S LLC")

is a Delaware limited liability company with its principal place of business in Columbus, Ohio,

and is the sole member of Defendant.  (*Id.* ¶¶ 2–3.)

V&S Memphis hired Plaintiff, who is African-American, on March 16, 2015, as a Plant

Foreman/Supervisor to work in the Millington Plant.  (*Id.* ¶ 5.)  Plaintiff never worked for V&S

LLC.  (*Id.* at ¶ 6.)  Plaintiff was interviewed by Tom Ness, Defendant's Plant Manager at the

time, and Ness played a role in Plaintiff's hiring.  (*Id.* ¶ 7.)

Plaintiff received a copy of Defendant's Employee Handbook at the outset of his

employment and received safety training.  (*Id.* ¶ 8.)  Defendant's Employee Handbook

contained, among other things, a Non-Discrimination and Sexual Harassment Policy (which also

prohibits other forms of harassment) and a complaint procedure.  (*Id.* ¶ 9.)  Plaintiff received

training in OSHA safety rules and knew what the safety rules were for the Plant.  (*Id.* ¶ 10.)

Plaintiff performed the duties set forth in the job description for the Plant Foreman

position, as well as those he was instructed to perform.  (*Id.* ¶ 11.)  Plaintiff had no employment

agreement that specified he would perform certain duties as Plant Foreman, and he signed no

employment agreement to work for Defendant.  (*Id.* ¶ 12.)  As Plant Foreman, Plaintiff

supervised twelve to thirteen full-time employees and was responsible for, among other things,

making sure his employees followed safety rules.  (*Id.* ¶¶ 13–14.)  Plaintiff was the only Plant

Foreman, and there were no supervisors below him.  (*Id.* ¶ 15.)  No one else in the Plant did work that was similar to the work he performed as Plant Foreman.  (*Id.* ¶ 44.)  Ness later became Operations Manager at the Plant, and William Martin became Plant Manager.  (*Id.* ¶ 16.)  Plaintiff had good relationships with Ness and Martin and other more senior management employees.  (*Id.* ¶ 17.)

During his employment, Plaintiff was formally disciplined on four occasions (including for the incident that led to his termination), in addition to receiving verbal counseling.  (*Id.* ¶ 18.)  On April 13, 2016, Plaintiff received written discipline for failure to follow instructions and for violation of safety rules, specifically for failure to supervise the daily crane and forklift inspections.  (*Id.* ¶ 19.)  On April 16, 2016, he was written up again for failing to supervise daily crane and forklift inspections and received a two-day suspension, as well as a final warning.  (*Id.* ¶ 20.)

Defendant's safety program requires all equipment (i.e., forklifts and overhead cranes) to be inspected daily, prior to the start of each shift, and the Plant Foreman/Supervisor's responsibilities include making sure these inspections take place.  (*Id.* ¶ 21.)  This inspection requirement was explained to Plaintiff on multiple occasions, but Plaintiff failed to ensure the inspections were done.  (*Id.* ¶ 22.)  Martin was present during both incidents when Plaintiff was reprimanded in 2016 for failing to complete the inspections.  (*Id.* ¶ 23.)  Both times, Plaintiff failed to give a reason as to why the inspections were not done.  (*Id.*)

Plaintiff received a pay increase on August 29, 2016, at Ness's request.  (*Id.* ¶ 24.)  On March 3, 2017, Plaintiff received a $1,000 bonus after Ness advocated for Plaintiff to receive the bonus.  (*Id.* ¶ 25.)  On May 11, 2017, Plaintiff received a performance evaluation from Ness that contained mostly scores in the three and four range, out of a possible five.  (*Id.* ¶ 26.)

6

On August 5, 2017, Plaintiff was written up for failing to report to work on a Saturday, which had been posted as mandatory overtime, and he did not call in to report that he would not be at work.  (*Id.* ¶ 27.)  That day, Martin called Plaintiff around 7:30 a.m. to see why he was not at work.  (*Id.* ¶ 28.)  Plaintiff did not answer, and Martin tried to contact Plaintiff several more times that morning but did not reach him.  (*Id.* ¶ 29.)  Martin received a phone call from Plaintiff around 2:00 p.m., and Plaintiff stated that he was unaware he had to work.  Martin asked Plaintiff if he had seen the sign posted for scheduled mandatory overtime on Saturday.  Plaintiff responded that he did see the sign, but Martin had not specifically told him about mandatory overtime, so Plaintiff did not feel he had to work.  (*Id.* ¶ 30.)

Martin explained to Plaintiff that, whenever mandatory overtime is posted, it is company policy for a supervisor to be present.  Martin asked Plaintiff why he thought he was not required to work mandatory overtime that day, when he had done so every other time for the previous year.  (*Id.* ¶ 31.)  Plaintiff did not give Martin an answer, other than to say Martin did not tell him it was mandatory, even though Plaintiff acknowledged he saw the sign about mandatory overtime.  (*Id.* ¶ 32.)

On August 12, 2017, Plaintiff told Ness that he had informed Maintenance Manager Gary Snyder of a crane problem and then left the area to do something else.  (*Id.* ¶ 34.)  When he returned, Plaintiff told Ness that he noticed a heavy rack on the temporary rack stands, without the crane hooked up to it, which is against company policy and a significant safety violation.  (*Id.* ¶ 35.)  The same issue had occurred the week before, and a meeting was held with the entire production crew to explain that the situation was life-threatening and could never happen again.  (*Id.* ¶ 36.)  When Ness again saw the rack on the stand not supported with a crane on August 12, 2017, he asked Plaintiff how it happened.  Plaintiff told him that Snyder was responsible and

7

asked, "what do you expect me to do." (*Id.* ¶ 37.) Ness told Plaintiff that, just because someone else made a bad decision and put others' lives in danger, it did not mean that no action should be taken by a supervisor to remedy the hazard. (*Id.* ¶ 38.) Ness concluded that Plaintiff did not comprehend the severity of his failure to act or that it was his responsibility to take action as a supervisor. (*Id.* ¶¶ 39–40.)

Defendant suspended Snyder, without pay, over the safety incident involving the crane. (*Id.* ¶ 41.) Snyder had been employed with Defendant for more than thirty years and, unlike Plaintiff, did not have a disciplinary record. (*Id.* ¶ 42.) Plaintiff admitted that Snyder had been employed with the Defendant for a long time and that he did not know Snyder's disciplinary history. (*Id.* ¶ 43.)

On August 15, 2017, Ness consulted with Tammy Kinsey, Director and Vice President for Human Resources and Personnel for V&S LLC, and they decided to terminate Plaintiff for his involvement in the crane incidents. (*Id.* ¶ 33.) According to Kinsey, termination was the next disciplinary step for Plaintiff, as he had previously received formal discipline and counseling for safety issues. (*Id.* ¶ 45.) On the other hand, suspension without pay was the appropriate discipline for Snyder because he had been employed with the company for more than thirty years and had no disciplinary record. (*Id.* ¶ 46.) Ness read Plaintiff the 2016 disciplinary warnings and told him he was being terminated, and Plaintiff collected his belongings and left. (*Id.* ¶ 48.) Plaintiff testified that he believes his termination amounted to race discrimination because Snyder is white and was not fired. (*Id.* ¶ 47.)

In April 2016, a little more than a year before he was terminated, Plaintiff contacted Kinsey to complain about Ness using curse words when directing Plaintiff to complete an order and telling Plaintiff that employees could be fired for missing work when Plaintiff left work to

go to the doctor.  (*Id.* ¶ 49.)  The cursing was not racial in nature.  (*Id.* ¶ 62.)  Plaintiff testified

that he believes the disciplinary warnings he received later that month were retaliation for his

complaints.  (*Id.* ¶ 50.)  However, Plaintiff never complained to Kinsey about the disciplinary

warnings.  (*Id.* ¶ 51.)  Plaintiff further testified that he is not aware of whether other employees

were written up for the same issues.  (*Id.* ¶ 52.)

Plaintiff testified that someone told him during 2015 or 2016 that Ness used the phrase

"moon cricket" (a phrase Plaintiff had never heard before), but Plaintiff never asked Ness about

it, nor did he inform Kinsey about it.  (*Id.* ¶ 53.)  According to Ness, he has never called Plaintiff

or anyone else a "moon cricket" and had never heard that phrase until Plaintiff filed his Charge

of Discrimination.  (*Id.* ¶ 54.)  Plaintiff testified that, on December 6, 2016, he heard Ness refer

to him as "Will's Boy"—a reference to plant manager Will Martin—which offended Plaintiff.

(*Id.* ¶ 55.)  Plaintiff told Ness that the comment offended him, and Ness told Plaintiff that he

meant it as a joke.  (*Id.* ¶ 56.)  Plaintiff never heard Ness use the phrase again, and Plaintiff never

complained about it to Kinsey or anyone else in the company.  (*Id.* ¶ 57.)  Plaintiff also testified

that, on December 16, 2016, a now-deceased employee of Defendant told Plaintiff that Ness used

the word "boy," but Plaintiff never told anyone about it.  (*Id.* ¶ 58.)  Plaintiff's claim for

defamation is based on Ness referring to him as "Will's Boy" and saying "moon cricket."  (*Id.*

¶ 62.)

Plaintiff testified that he signed up to participate in Defendant's 401k plan, but he is not

certain whether any money was taken out of his paycheck, never checked to see if money was

taken out of his check, did not talk to anyone at the company about plan contributions, and never

asked for a withdrawal of 401k funds.  (*Id*. ¶ 59.)  Defendant has no record of Plaintiff electing to

participate in the 401k plan, and no deductions were taken from his check. (*Id.* ¶ 60.) Plaintiff

was not a participant in any retirement plan offered by Defendant or V&S LLC. (*Id.* ¶ 61.)

Plaintiff filed an administrative charge with the Tennessee Human Rights Commission

and the Equal Employment Opportunity Commission ("EEOC") on February 15, 2018, and

checked the race discrimination and retaliation boxes, but not the national origin box. (*Id.* ¶ 63.)

Plaintiff testified that he was born in the United States and that he is equating race with national

origin. (*Id.* ¶ 64.) Plaintiff never complained to Kinsey that he was being discriminated against

or harassed due to his race or that he was subject to retaliation by Ness or anyone else. (*Id.* ¶ 65.)

Plaintiff testified that he called Bob Messler, an official at V&S LLC, in April 2016 to complain

about the two cursing incidents with Ness, and he was directed to speak with Kinsey, but these

reported incidents were not racial in nature. (*Id.* ¶¶ 49, 62, 68.) Kinsey first learned of

Plaintiff's allegations of race discrimination, racial harassment, and retaliation when he filed a

Charge of Discrimination with the Tennessee Human Rights Commission and EEOC. (*Id.* ¶ 66.)

## II.    Facts Relating to the Motion to Dismiss

On October 10, 2017, less than two months after being terminated by Defendant, Plaintiff

filed a Chapter 13 Voluntary Petition with the United States Bankruptcy Court for the Western

District of Tennessee, Case No. 17-28932. (ECF No. 32-1.) Plaintiff has been represented by

counsel throughout his bankruptcy proceedings. (*Id.* at 7; ECF No. 32-6, at 1.) Question 33 on

Schedule A/B of his Petition asked about "[c]laims against third parties, whether or not you have

filed a lawsuit or made a demand for payment. Examples: Accidents, employment disputes,

insurance claims, or rights to sue." (ECF No. 32-1, at 14.) In response, Plaintiff marked "no,"

indicating that he had no such claims. (*Id.*) Plaintiff declared under penalty of perjury that the

summary and schedules supporting his Voluntary Petition were true and correct. (*Id.* at 30.)

The Bankruptcy Court entered an Order Confirming Plaintiff's Chapter 13 Plan on February 1, 2018.  (ECF No. 32-2.)  On February 9, 2018, eight days after approval of his Chapter 13 Plan, Plaintiff filed a Charge of Discrimination against Defendant with the EEOC.  (ECF No. 45-6, at 104–28.)  Plaintiff's Chapter 13 Plan was modified by administrative order on at least three occasions after Plaintiff filed his EEOC Charge.  (ECF No. 32-3.)  On April 25, 2018, Plaintiff filed a motion to make further modifications to his Chapter 13 Plan and to forgive missed payments.  (ECF No. 32-5.)  On November 11, 2020, after Defendant filed the Motion to Dismiss, Plaintiff filed a motion to modify his Chapter 13 Plan in his bankruptcy case pursuant to the CARES Act.  *In re: Wilbert F. Middleton*, No. 17-28932 (Bankr. W.D. Tenn. Nov. 11, 2020), ECF No. 71.  Plaintiff's bankruptcy case remains pending, and the most recent docket entry was on February 7, 2021.  *Id.*

On November 8, 2019, the EEOC issued a Notice of Dismissal and Right to Sue Letter.  (ECF No. 11-1.)  Plaintiff's original Complaint in this case was filed on January 7, 2020, and his Amended Complaint was filed on January 23, 2020.  (ECF Nos. 1, 11.)  According to the Bankruptcy Court's docket, Plaintiff did not file an Amended Schedule A/B or otherwise notify the Bankruptcy Court or Trustee that he had claims against Defendant or that he filed an EEOC Charge and lawsuit against Defendant in this case.  *See generally In re: Wilbert F. Middleton*, No. 17-28932 (Bankr. W.D. Tenn.).

## PROPOSED CONCLUSIONS OF LAW

### I.    Standard of Review for Failure to State a Claim

To determine whether Plaintiff's Complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544 (2007). "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). The court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). Pleadings provide facial plausibility when they present "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"[A] pleading filed *pro se* is to be liberally construed and held to less stringent standards than a pleading filed by counsel." *Kondaur Cap. Corp. v. Smith*, 802 F. App'x 938, 945 (6th Cir. 2020) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); s*ee also Vandiver v. Vasbinder*, 416 F. App'x 560, 562 (6th Cir. 2011) (finding the less stringent standard applies to *pro se* complaints, "however inartfully pleaded"). Nevertheless, *pro se* litigants "are not exempt from the requirements of the Federal Rules of Civil Procedure." *Wright v. Penguin Random House*, 783 F. App'x 578, 581 (6th Cir. 2019) (citing *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006)); *see also Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)

("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants.  Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party.  While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue."); *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot 'create a claim which a plaintiff has not spelled out in his pleading.'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

Although a decision on a motion for failure to state a claim "rests primarily upon the allegations of the complaint, 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account.'" *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).  Because Plaintiff's bankruptcy proceedings are a matter of public record, they may be considered by the Court.  *Id.*; *see also Cooper v. Gucci Am., Inc.*, No. 3:19-cv-735-DJH-llk, 2020 WL 4604498, at *1 (W.D. Ky 2020) ("Although [plaintiff's] complaint contains no reference to her bankruptcy, [defendant] attached her bankruptcy filings to its motion for judgment on the pleadings. . . .  [Plaintiff's] bankruptcy proceedings are all matters of public record and may therefore be considered by the Court.") (citations omitted).

## II.     Standard of Review for Summary Judgment Motions

Courts evaluate motions for summary judgment under Federal Rule of Civil Procedure 56(a).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."  *Harper v. City of Cleveland*, 781 F. App'x 389, 392 (6th Cir. 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).  Thus, summary

judgment is appropriate "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also*

*Wilmington Tr. Co. v. AEP Generating Co.*, 859 F.3d 365, 370 (6th Cir. 2017) ("Summary

judgment is proper when, viewing the evidence in the light most favorable to the nonmoving

party, there is no genuine dispute as to any material fact and the moving party is entitled to

judgment as a matter of law.") (quoting *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*,

759 F.3d 522, 526 (6th Cir. 2014)). "A material fact is one 'that might affect the outcome of the

suit,' and a genuine dispute exists 'if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party.'" *Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The moving party bears the burden

of showing that no genuine issues of material fact exist." *McClellan v. Midwest Machining, Inc.*,

900 F.3d 297, 302 (6th Cir. 2018) (citing *Celotex*, 477 U.S. at 324).

      In evaluating summary judgment motions, a court must "draw all reasonable inferences

in favor of the nonmoving party." *Harper*, 781 F. App'x at 392 (citing *Matsushita Elec. Indus.

Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Nevertheless, "[t]he nonmoving party

must do more than simply 'show that there is some metaphysical doubt as to the material facts.'"

*Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 652 (W.D. Tenn. 2020) (quoting *Lossia

v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018)). A properly supported motion for

summary judgment will not be defeated by conclusory allegations, speculation, or

unsubstantiated assertions. *Bradley v. Wal-Mart Stores E., LP*, 587 F. App'x 863, 866 (6th Cir.

2014) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

      "Although summary judgment must be used carefully, it 'is an integral part of the Federal

Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination

14

of every action[,] rather than a disfavored procedural shortcut.'" *Stevens-Bratton*, 437 F. Supp. 3d at 652 (quoting *FDIC v. Jeff Miller Stables*, 573 F.3d 289, 294 (6th Cir. 2009)).  Ultimately, "[w]hen the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law, and summary judgment is proper."  *Peterson v. Medtronic, Inc.*, No. 2:17-cv-02457-MSN-atc, 2020 WL 6999225, at *4 (W.D. Tenn. Sept. 30, 2020) (quoting *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013)).

## III.    Judicial Estoppel Requires Dismissal of Plaintiff's Claims

Both the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure require debtors to disclose, under penalty of perjury, all their assets, including claims against third parties.  11 U.S.C. § 521(a)(1)(B), Fed. R. Bankr. P. 1007(b)(1); *see also Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 424 (6th Cir. 2005) ("It is well-settled that a cause of action is an asset that must be scheduled under [11 U.S.C. § 521].").  "Without such disclosure, the basic system of marshaling of assets and the resulting distribution of proceeds to creditors would be an impossible task."  *In re Louden*, 106 B.R. 109, 112 (Bankr. E.D. Ky. 1989).

The duty to disclose is an "affirmative duty" because "the integrity of the bankruptcy system depends on a full and honest disclosure by debtors of all their assets."  *Lewis*, 141 F. App'x at 428.  This affirmative duty to disclose is ongoing and continues for the duration of the bankruptcy proceeding.  *See, e.g.*, *Kimberlin v. Dollar Gen. Corp.*, 520 F. App'x 312, 314 (6th Cir. 2013); *Lewis*, 141 F. App'x at 424; *Bone*, 956 F. Supp. 2d. at 884.

"It is clear that causes of action belonging to the debtor prior to bankruptcy constitute estate property . . . ."  *Spartan Tube & Steel v. Himmelspach*, 102 F.3d 223, 225 (6th Cir. 1996). When a debtor fails to disclose claims against third parties in his bankruptcy proceedings, he

may be precluded from pursuing those claims under the doctrine of judicial estoppel. *See, e.g.*, *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472 (6th Cir. 2010); *Browning v. Levy*, 283 F.3d 761, 775–76 (6th Cir. 2002); *Bone v. Taco Bell of Am., LLC*, 956 F. Supp. 2d 872, 883–85 (W.D. Tenn. 2013); *Taylor v. Council on Quality & Leadership*, No. 18-cv-02764-JTF-tmp, 2019 WL 3080762, at \*2–3 (W.D. Tenn. Apr. 25, 2019), *report and recommendation adopted*, 2019 WL 2269919 (W.D. Tenn. May 28, 2019). Judicial estoppel applies if

> (1) the plaintiff-debtor assumed a position that was contrary to the one that he asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) the omission did not result from mistake or inadvertence."

*Bone*, 956 F. Supp. 2d at 880 (quoting *Stephenson v. Malloy*, 700 F.3d 265, 272 (6th Cir. 2012)). In this case, each of these factors is met, and judicial estoppel bars Plaintiff's claims against Defendant.

With respect to the first two factors, they are "easily met" and pose "little difficulty." *Stephenson*, 700 F.3d at 273–74 (discussing *White,* 617 F.3d at 477–480). Plaintiff alleges that the discriminatory acts that support his claims occurred from "March 16, 2015 through August 15, 2017." (ECF No. 11 ¶¶ 14–15.) However, in his Chapter 13 Voluntary Petition and throughout his bankruptcy proceedings, Plaintiff has not disclosed his claims against Defendant. *See generally In re: Wilbert F. Middleton*, No. 17-28932 (Bankr. W.D. Tenn.). Thus, the first factor is met. The second factor is met as well, as the Bankruptcy Court approved Plaintiff's Chapter 13 Plan and has entered multiple administrative orders based on his Plan. (*See, e.g.*, ECF Nos. 32-2, 32-3.)

When determining the third factor—whether the debtor's omission resulted from mistake or inadvertence—courts consider whether "(1) [the debtor] lacked knowledge of the factual basis of the undisclosed claims; (2) [the debtor] had motive for concealment; and (3) the evidence

indicates an absence of bad faith." *Kimberlin*, 520 F. App'x at 315 (quoting *White*, 617 F.3d at 478). Once the moving party establishes the first two prongs, it becomes the debtor-plaintiff's burden to set forth evidence establishing an absence of bad faith in his failure to disclose legal claims to the bankruptcy court. *White*, 617 F.3d at 478.

Regarding the first prong, Plaintiff had knowledge of the factual basis of his claims against Defendant when he filed his Chapter 13 Voluntary Petition on October 10, 2017, which was less than two months after being terminated by Defendant. (ECF No. 32-1.) Furthermore, it is indisputable that Plaintiff currently knows about his claims against Defendant, and yet he has taken no steps in the bankruptcy proceedings to amend his schedules or otherwise disclose his claims. *See generally In re: Wilbert F. Middleton*, No. 17-28932 (Bankr. W.D. Tenn.).

With respect to the second prong, Plaintiff "also had motive to conceal this employment claim from the bankruptcy court . . . because 'motive to conceal assets is always present in a Chapter 13 case, because it is always in a Chapter 13 petitioner's interest to minimize income and assets.'" *Taylor*, 2019 WL 3080762, at *4 (quoting *Harrah v. DSW, Inc.*, 852 F. Supp. 2d 900, 905 (N.D. Ohio 2012)).

For the third prong, "[t]he 'bad faith' analysis 'focuses on affirmative actions taken by the debtor to notify the trustee or bankruptcy court of an omitted claim.'" *Id.* (quoting *Cruise v. Sun Prods. Corp.*, 221 F. Supp. 3d 990, 997 (W.D. Tenn. 2016)). Here, Plaintiff has presented no evidence that he has taken any steps to notify the trustee or bankruptcy court of his omitted claim. In fact, Plaintiff still has not disclosed his claims, even after his failure to disclose was directly raised in Defendant's Motion to Dismiss. In Plaintiff's Response, he does not attempt to explain his failure to disclose his claims. (ECF No. 41.) Rather, Plaintiff argues only that Defendant is not a creditor of Plaintiff, such that his bankruptcy is purportedly immaterial to the

instant case. (*Id.* at 2.)  Whether Defendant is a creditor of Plaintiff is irrelevant to whether the

doctrine of judicial estoppel applies in this case.  Because all of the factors relating to judicial

estoppel based on failure to disclose claims in bankruptcy are satisfied, Defendant's Motion to

Dismiss should be granted.  The Court recommends the dismissal with prejudice of all of

Plaintiff's claims against Defendant on this basis.

**IV.    Alternatively, Defendant's Motion for Summary Judgment Should Be Granted**

Plaintiff's Amended Complaint consists of claims for (1) hostile work environment based

on national origin and race, (2) retaliation based on protected activity, (3) defamation, (4) breach

of employment agreement, and (5) conversion of retirement funds and overtime.  (ECF No. 11.)

For the reasons set forth below, summary judgment should be granted, and Plaintiff's claims

should be dismissed.

A.    Hostile Work Environment Based on National Origin and Race

As an initial matter, Plaintiff's claim for hostile work environment based on national

origin must be dismissed for failure to exhaust administrative remedies.  Plaintiff's Charge of

Discrimination did not include a claim for national origin discrimination, and Plaintiff testified

that he was born in the United States and that he is equating race with national origin.  (ECF No.

45-1 ¶¶ 63–64.)  National origin claims are not "substantially similar to those of racial

discrimination claims of a different group.  While there may be overlap between the concepts of

race and national origin themselves, there is no case law to support the application of the single

filing rule between the two distinct groups."  *Peeples v. City of Detroit*, 891 F.3d 622, 633 (6th

Cir. 2018) (citations omitted).  Failure to exhaust administrative remedies with respect to Title

VII claims prevents those claims from proceeding in federal court.  *See, e.g.*, *Russ v. Memphis

Light Gas & Water*, 720 F. App'x 229, 237 (6th Cir. 2017); *Younis v. Pinnacle Airlines, Inc.*, 610

18

F.3d 359, 363 (6th Cir. 2010).  As a result, Defendant is entitled to summary judgment on

Plaintiff's national origin claims.

Plaintiff's hostile work environment claim based on either race or national origin should

also be dismissed because (1) the claim is time-barred and (2) Plaintiff has failed to establish a

prima facie case.  With respect to the untimeliness of his claim, Plaintiff was required to file his

Charge of Discrimination within 300 days of the last alleged act of racial harassment.  42 U.S.C.

§ 2000e-5(e)(1).  Ness allegedly made the purported race-based comments in 2015 and 2016,

with the latest comment occurring in December 2016.  (ECF No. 45-1 ¶¶ 53–58.)  Plaintiff filed

his Charge of Discrimination on February 15, 2018.  (*Id.* ¶ 63.)  None of the alleged racial

harassment occurred within 300 days of February 15, 2018.  *See Nat'l R.R. Passenger Corp. v.

Morgan*, 536 U.S. 101, 118 (2002) ("In order for the charge to be timely, the employee need only

file a charge within 180 or 300 days of any act that is part of the hostile work environment.");

*Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009) ("A claim under Title VII is timely

if filed within 300 days of any single act contributing to the hostile work environment.").

Plaintiff's claim of hostile work environment discrimination is time-barred.

Plaintiff has also failed to establish a prima facie case of hostile work environment

discrimination, which requires a plaintiff to demonstrate that "(1) she was a member of a

protected class; (2) she was subjected to unwelcome racial harassment; (3) the harassment was

based on race; (4) the harassment unreasonably interfered with her work performance by creating

an intimidating, hostile, or offensive work environment; and (5) the employer is liable."  *Barrett*,

556 F.3d at 515 (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)).  In this case,

Plaintiff has failed to demonstrate the fourth element, and thus the Court will refrain from

consideration of the other four.

To assess the fourth prong, courts "must examine the totality of the circumstances." *Id.* (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)). This examination considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris*, 510 U.S. at 23). "Conduct must be extreme to amount to a change in the terms and conditions of employment." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). "Simple teasing, . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* "The third prong, however, limits the scope of the analysis in the fourth prong: 'only harassment based on the plaintiff's race may be considered.'" *Jefferson v. Fresenius Med. Care Holdings, Inc.*, No. 3:17-cv-00697, 2019 WL 4725194, at *14 (M.D. Tenn. Aug. 30, 2019) (quoting *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011)).

The Sixth Circuit has provided examples of cases that were not "sufficiently severe or pervasive" to satisfy the fourth prong of a hostile work environment claim, even though they involved "deplorable and offensive" race-based statements. *See Lovelace v. BP Prod. N. Am.*, 252 F. App'x 33, 41 (6th Cir. 2007). For example, in a case

> where staff members used the pejorative N-word in referring to participants in a program that plaintiff supervised; an executive described a board member as a "token black," commented that the participants were slovenly or were "pigs" at meals, and tolerated others' racist behavior; another coworker made three racist jokes; and rude comments were made about African-American staff members' bathroom habits,

the court found that, "[w]hile these incidents are deplorable and offensive, they do not amount to a pervasive, aggressive, or constant course of conduct." *Id.* (quoting *Kelly v. Senior Ctrs., Inc.*, 169 F. App'x 423, 429 (6th Cir. 2006)); *see also id.* (citing *Bowman v. Shawnee State Univ.*, 220

F.3d 456, 464 (6th Cir. 2000), as "holding that five incidents of racial harassment did not constitute severe or pervasive conduct"; *Smith v. Leggett Wire Co.*, 220 F.3d 752, 760–61 (6th Cir. 2000), as holding that "incidents including one racial slur directed at plaintiff, racially offensive and obscene cartoon circulated in workplace, and African-American employee referred to as a 'gorilla' were deemed not severe or pervasive enough to constitute objectively hostile work environment"; *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997), as "holding that plaintiffs failed to show existence of an objectively hostile work environment where most of the alleged discriminatory remarks were not directed at the plaintiff and '[a]lthough the verbal comments were offensive and inappropriate, and the record suggests that defendant's employees did not always conduct themselves in a professional manner, Title VII was not designed to purge the workplace of vulgarity'" (quotation omitted)).

Plaintiff's hostile work environment claim is premised on Ness's alleged use of the phrase "moon cricket" on one occasion in either 2015 or 2016 and Ness's alleged reference to Plaintiff as "Will's Boy" twice in December 2016. (ECF No. 45-1 ¶¶ 53–58.) Based on the totality of the undisputed summary judgment record before the Court, these statements do not rise to the level of "sufficiently severe or pervasive" conduct to satisfy the fourth prong of a prima facie case of hostile work environment. Though these statements—assuming they were made, which Defendant and Ness dispute—may be racial in nature and "deplorable and offensive," they do not rise even to the level of the examples provided by the Sixth Circuit in *Lovelace*, which themselves did not satisfy the fourth prong of the prima facie case.

Even if Plaintiff could establish a prima facie case of hostile work environment discrimination, Defendant has offered legitimate, nondiscriminatory reasons for Plaintiff's discipline and his eventual termination. (*Id.* ¶¶ 18–23, 27–47.)

21

> Once a plaintiff establishes a prima facie case of discrimination, the burden shifts
> to the defendant to rebut the presumption of discrimination by providing evidence
> showing that the plaintiff was terminated for a legitimate nondiscriminatory
> reason. The plaintiff may demonstrate that the defendant's explanation was
> merely pretext by showing (1) that the proffered reason had no basis in fact, (2)
> that the proffered reason did not actually motivate the termination, or (3) that the
> proffered reason was not sufficient to motivate the discharge.

*Smith*, 220 F.3d 752, 758–59 (6th Cir. 2000)) (citations omitted). Plaintiff has offered no

evidence that the reasons given by Defendant for his discipline and termination are a pretext for

discrimination based on race or national origin.

Plaintiff testified that he believes he was terminated due to his race because Snyder, the

other employee involved in the crane safety violation, is white and was not fired. (ECF No. 45-1

¶ 47.) Defendant instead suspended Snyder without pay. Defendant justifies the distinction

because Snyder had been an employee for over thirty years and did not have a disciplinary

record, whereas Defendant had been employed for less than three years and had four instances of

formal discipline. (*Id.* ¶¶ 5, 18, 41–42.) Simply put, Snyder was not similarly situated to

Plaintiff due to the differences in their work and disciplinary history. Based on the undisputed

record before the Court, Defendant has established legitimate, non-discriminatory reasons for

Plaintiff's termination, and Plaintiff has failed to demonstrate that these reasons are merely

pretextual. *See Nicholas v. Delta Airlines, Inc.*, 753 F. App'x 388, 389 (6th Cir. 2019) (finding

an employee who was fired for "safety and attendance violations" failed to demonstrate those

reasons were pretextual, where the employee offered no evidence that the employer did not have

"an honest belief" in those reasons) (citations omitted).

For all the reasons above, Defendant is entitled to summary judgment on Plaintiff's

hostile work environment claim, and Plaintiff's claims based on race and national original should

be dismissed.

B.    <u>Retaliation Based on Protected Activity</u>

In the Amended Complaint, Plaintiff alleges that he was subject to retaliation after he complained about discrimination based on national origin.  (ECF No. 11, at 9.)  To establish a claim of retaliation, a plaintiff must show: "(1) that he engaged in a protected activity; (2) that the defendant had knowledge of his protected conduct; (3) that the defendant took an adverse employment action toward him; and (4) that there was a causal connection between the protected activity and the adverse employment action."  *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008) (quoting *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 381 (6th Cir. 2002)).  "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m).  This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 359–60 (2013).

For activity to be "protected" under Title VII for purposes of a retaliation claim, the activity must involve opposition to an unlawful employment practice, which in this case would be discrimination based on race or national origin.  42 U.S.C. § 2000e-3(a); *see also Collins v. Memphis Goodwill Indus., Inc.*, 489 F. App'x 901, 910 (6th Cir. 2012) (finding that complaints of feeling threatened that did not specifically reference alleged acts of Title VII discrimination or harassment did not amount to protected activity for purposes of a retaliation claim); *Fox v. Eagle Distrib. Co., Inc.*, 510 F.3d 587, 591 (6th Cir. 2007).  Based on the undisputed facts before the Court, Plaintiff did not undertake any activity in opposition to that alleged discrimination—he never complained, formally or informally, to Kinsey or anyone else in the company about either race or national origin discrimination prior to his termination on August 15, 2017.  (ECF No. 45-

1 ¶¶ 9, 53–58, 65.)  As a result, Plaintiff did not engage in protected activity and has thus failed to demonstrate a prima facie case of retaliation.

Even assuming Plaintiff could establish a prima facie case of retaliation, as discussed above in Section IV-A, Defendant has offered legitimate, nondiscriminatory reasons for the discipline issued to Plaintiff and his eventual termination.  (*Id.* ¶¶ 18–23, 27–47.)  Plaintiff has offered no evidence that the reasons given by Defendant for his discipline and termination are a pretext for retaliation, rendering his claim untenable, particularly under the "but-for causation" proof required for Title VII retaliation claims.  *See Nassar*, 570 U.S. at 359–60.  Defendant is therefore entitled to summary judgment on Plaintiff's retaliation claim.

C.    Defamation

Plaintiff's Amended Complaint contains claims for "slander and defamation."  (ECF No. 11, at 9.)  In Tennessee, the statute of limitations for slander, which includes oral defamation, is six months from the time "the words are uttered."  Tenn. Code Ann. § 28-3-103.  Plaintiff filed this case on January 7, 2020.  (ECF No. 1; ECF No. 45-1 ¶ 67).  All of the underlying facts at issue in this case occurred more than six months before January 7, 2020.  (ECF Nos. 1, 11, 45-1.)  As a result, Plaintiff's defamation and slander claims are time barred, and Defendant is entitled to summary judgment on these claims.

D.    Breach of Employment Agreement

Plaintiff's Amended Complaint contains a claim for breach of contract of a purported employment agreement.  (ECF 11, at 10.)  However, none of the essential elements of a breach of contract claim are present.  *See Arc LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W. 3d 1, 26 (Tenn. Ct. App. 2005) ("The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract,

and (3) damages caused by the breach of the contract.") (quoting *Custom Built Homes v. G.S. Hinsen Co., Inc.*, No. 01A01-9511-CV-00513, 1998 WL 960287, at *3 (Tenn. Ct. App. Feb. 6, 1998)). Plaintiff admitted he had no written employment agreement with Defendant. (ECF 45-1 ¶ 12.) "Tennessee has long adhered to the doctrine of employment-at-will, which recognizes the right of either the employer or the employee to terminate the employment relationship at any time, for good cause, for bad cause, or for no cause at all, without being guilty of a legal wrong." *Maness v. Collins*, No. W2008–00941–COA–R3–CV, 2010 WL 4629614, at *7 (Tenn. Ct. App. Nov. 17, 2010). "In Tennessee, employees are presumed to be employed at will in the absence of an agreement for employment for a certain term." *Id.* Because Plaintiff did not sign an employment agreement, and there is no evidence of an enforceable employment contract in the record, Defendant is entitled to summary judgment on this claim.

      E.     <u>Conversion of Retirement Funds and Overtime</u>

As for Plaintiff's claim for conversion of retirement funds, it is undisputed that Plaintiff did not participate in the 401k plan when he was employed by Defendant, he did not talk to anyone at the company about plan contributions, he never checked to see if money for the plan was taken out of his check, and no deductions were taken from his check. (ECF No. 45-1 ¶¶ 59–61.) With respect to overtime, Plaintiff was a salaried management employee, and there is no evidence in the record that Plaintiff was not paid his salary as Plant Foreman. (*Id.* ¶¶ 11–15.) Furthermore, Plaintiff was terminated on August 15, 2017, and his Complaint was not filed until January 7, 2020, which exceeds the general two-year statute of limitations for claims for unpaid overtime compensation. *See* 29 U.S.C. § 255(a). As a result, Defendant is entitled to summary judgment on Plaintiff's claims for conversion of retirement funds and overtime.

## RECOMMENDATION

For the foregoing reasons, this Court recommends that Defendant's Motion to Dismiss and Motion for Summary Judgment should both be granted in full and that all of Plaintiff's claims against Defendant should be dismissed with prejudice.

Respectfully submitted this 24th day of August, 2021.

s/Annie T. Christoff
ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Within fourteen (14) days after being served with a copy of this report and recommendation disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute waiver of objections, exceptions, and further appeal.