# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| WILBERT FRANK MIDDLETON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:20-cv-02015-TLP-atc |
| v. | ) | |
| | ) | JURY DEMAND |
| VOIGT & SCHWEITZER LLC, Memphis | ) | |
| Galvanizing, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ADOPTING IN PART THE REPORT AND RECOMMENDATION

Pro se Plaintiff Wilbert Middleton sued his former employer, V&S Memphis Galvanizing LLC,[1] for many employment-related causes of action, including creating a hostile work environment in violation of Title VII of the Civil Rights Act of 1964. (ECF No. 11 at PageID 31.) Under Administrative Order 2013–05, the Court referred this case to Magistrate Judge Annie T. Christoff ("Judge Christoff") for management of all pretrial matters.

Defendant moved to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 31) and later moved for summary judgment under Rule 56 (ECF No. 45). Judge Christoff issued a Report and Recommendation ("R&R"), recommending that the Court grant Defendant's motion to dismiss, and, in the alternative, its motion for summary judgment. (ECF No. 52.)

---

[1] Plaintiff sued Voigt & Schweitzer LLC, but Defendant claims that V&S Memphis Galvanizing LLC is its correct name. (ECF No. 45-1 at PageID 303.)

For the reasons below, the Court **ADOPTS, IN PART,** the R&R as it relates to the motion for summary judgment.

## BACKGROUND

### I.    Facts of the Case

To start, the Court here summarizes Plaintiff's allegations taken from his amended complaint (ECF No. 11), unless otherwise noted.  In early 2015, Defendant hired Plaintiff, an African American man, as a plant foreperson for its facility in Millington, Tennessee.  (*Id*. at PageID 26.)  Defendant outlined Plaintiff's duties and responsibilities in an oral agreement and the parties never signed a written employment contract.  (*Id*.)  Even without a written agreement, Plaintiff understood his role required him to oversee a group of employees and ensure compliance with the facility's rules.  (*Id*. at PageID 26, 28–30.)  After about two and a half years on the job, Defendant terminated Plaintiff.  (*Id*. at PageID 30.)

Plaintiff alleged that, throughout his employment, Tom Ness, his direct supervisor,[2] "harassed and discriminated against" him because of his race.  (*Id*. at PageID 26.)  Plaintiff recounted three instances of this behavior.  First, Plaintiff claimed that Tom Ness treated him differently than the non-African American personnel and refused to provide Plaintiff with the "full authority" of the position.  (*Id*. at PageID 27.)  Second, another employee once informed Plaintiff that Tom Ness called him a "moon cricket"—a derogatory term associated with slavery. (*Id*.)  Finally, Plaintiff overheard Tom Ness call Plaintiff another manager's "boy."  (*Id*. at PageID 29.)

---

[2] Defendant disputed that Tom Ness was Plaintiff's direct supervisor.  (ECF No. 18 at PageID 59.)  Defendant noted that Ness was the facility's plant manager, and eventually its operations manager, but that he did not oversee Plaintiff directly.  (ECF No. 45-1 at PageID 304–05.)

And when Plaintiff confronted Tom Ness about the comment, Ness told Plaintiff that he was only joking.  (*Id*.)  Plaintiff eventually contacted somebody in Defendant's human resources department to complain about these instances of harassment and discrimination, but Defendant did nothing to address the situation.  (*Id*. at PageID 30.)

Defendant later terminated Plaintiff after he noticed, but failed to correct, a safety violation in August 2017.  (*Id*.)

## II.    Procedural History

About two months after Defendant terminated him, Plaintiff filed Chapter 13 bankruptcy. (ECF No. 32-1.)  And the Bankruptcy Court finalized his Bankruptcy Plan around four months later, in early 2018.  (ECF No. 32-2.)  A few days after that, Plaintiff filed an administrative charge and complaint with the Tennessee Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC") alleging that Defendant created a hostile work environment that led to racial discrimination and harassment.  (ECF No. 1 at PageID 4.) A year and a half later, the EEOC issued a Notice of Dismissal and Right to Sue letter.  And, about two months after that, over two years after being terminated, Plaintiff sued Defendant. (ECF No. 1.)

Plaintiff then timely amended his complaint (ECF No. 11) alleging five causes of action: (1) hostile work environment based on Plaintiff's national origin and race, (2) that Defendant terminated him in retaliation for reporting the discrimination, (3) that his supervisor's discriminatory comments amounted to defamation, (4) that Defendant breached the employment agreement, and (5) that Defendant unlawfully converted Plaintiff's retirement funds and overtime payments.  (*Id*. at PageID 31–33.)

Defendant answered (ECF No. 18) before moving to dismiss under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 31).  Defendant argued that the judicial estoppel doctrine barred Plaintiff from bringing these claims because he did not disclose the potential causes of action in his bankruptcy proceedings.  (*Id*.)  After Plaintiff responded to the motion to dismiss (ECF No. 41),[3] Defendant moved for summary judgment on all causes of action.  (ECF No. 45.)  Plaintiff responded (ECF No. 48), and Defendant then replied (ECF No. 49).

After reviewing the filings, Magistrate Judge Christoff issued an R&R suggesting that the Court grant Defendant's motion to dismiss under 12(b)(6); or, in the alternative, that the Court grant Defendant's motion for summary judgment.  (ECF No. 52.)

## THE REPORT & RECOMMENDATION

### I.    Summary Judgment

Magistrate Judge Christoff began by discussing the undisputed facts.  (ECF No. 52 at PageID 522.)  Judge Christoff adopted Defendant's concise statement of sixty-eight facts (ECF No. 45-1) as undisputed because Plaintiff failed to refute Defendant's facts or submit any of his own.  (ECF No. 52 at PageID 523.)  Plaintiff only responded to Defendant's facts by labeling the statement as "hearsay" and noting that its contents do not "disprove any of the facts alleged in Plaintiff's complaint."  (ECF No. 48 at Page ID 509.)  But, as Judge Christoff explained, this response did properly challenge Defendant's facts, under either Federal Rule 56 or the Local Rules.  (ECF No. 52 at PageID 523–24.)

With that in mind, here are the undisputed facts: Plaintiff never reported any instances of racial discrimination or harassment to Defendant (ECF 45-1 at PageID 309–10), Defendant's

---

[3] Plaintiff's response to the motion was untimely, but still considered by Magistrate Judge Christoff.  (ECF No. 52 at PageID 521.)

4

employee referred to Plaintiff by a racialized term at least once (*Id*.), Defendant terminated
Plaintiff because he committed a serious safety violation after already having a disciplinary
record (*Id*. at PageID 306–10), and Plaintiff never participated in Defendant's 401K plan (*Id*. at
PageID 310).

Next, Judge Christoff correctly recounted the legal standards for a motion for summary
judgment before addressing each of Plaintiff's claims.  (ECF No. 52 at PageID 533–35.)  Judge
Christoff suggested that the Court should grant summary judgment for Defendant on all five
causes of action.  (*Id*. at PageID 538–45.)  In reaching this conclusion, Judge Christoff correctly
followed Sixth Circuit and Supreme Court precedent.

A.     **Hostile Work Environment Based on National Origin and Race**

Judge Christoff began with Plaintiff's hostile work environment claim and determined
that under either theory, based on national origin or race, his claims could not survive.  (*Id*. at
PageID 538–39.)  For starters, Plaintiff failed to exhaust his administrative remedies for his
national origin hostile work environment claim because he did not mention the issue in his
EEOC charge.  (*Id*. at PageID 538–39; ECF No. 1 at PageID 4.)  Plaintiff's EEOC complaint
included only a race-based hostile work environment claim—distinct from claims of national
origin discrimination.  (ECF No. 52 at PageID 538–39).  And because plaintiffs have to submit
their charges to the EEOC before suing on hostile work environment claims, Judge Christoff
determined that Plaintiff was barred from pursuing this theory.  (*Id*.)

Next, Judge Christoff found that Plaintiff failed to establish a prima facie case of a race-
based hostile work environment because the alleged discriminatory and harassing treatment was
not extensive enough to meet the Sixth Circuit's threshold.  (*Id*. at PageID 539–40).  Even if the
alleged offensive conduct occurred, Plaintiff lacked evidence that Defendant's behavior was

"'sufficiently severe or pervasive'" to constitute a hostile work environment.  (*Id*. at PageID 540 quoting *Lovelace v. BP Prod. N. Am.*, 252 F. App'x 33, 41 (6th Cir. 2007).)  In essence, Plaintiff's three cited instances of discriminatory comments were not enough to show that his workplace was hostile or offensive.  (ECF No. 52 at PageID 540–41.)

But, even more to the point however, Judge Christoff found both hostile work environment claims failed because Plaintiff waited too long to bring them.  (*Id*. at PageID 539.) The claims were time barred.  (*Id*.)  Plaintiff did not file his complaint with the EEOC within 300 days of the discriminatory comments or incidents, making his claims untimely.  (*Id*.)

### B.    Retaliation

Much like Plaintiff's race-based hostile work environment claim, Judge Christoff found that Plaintiff failed to make a prime facie case for retaliation.  (*Id*. at PageID 543–44.)  In particular, Plaintiff's retaliation claim failed on two grounds.  First, Plaintiff did not allege that he engaged in protected activity.  (*Id*.)  Although Plaintiff claimed that he spoke with Defendant's human resources department (ECF No. 11 at PageID 30), it was undisputed that Plaintiff "never complained, formally or informally," about discriminatory or harassing comments.  (*Id*.; ECF No.45-1 at PageID 309–10.)  Defendant only learned of Plaintiff's allegations after he filed his complaint with the EEOC.  (*Id*. at PageID 311.)  And because Plaintiff did not report any instances of harassment, and therefore did not engage in protected behavior, Defendant could not have retaliated against him for that behavior.  (ECF No. 52 at PageID 544.)

And second, even if Plaintiff engaged in protected activity, he failed to show that he was terminated as a result of reporting the discriminatory comments.  (*Id*. at PageID 544.)  Plaintiff has neither "proffer[ed] evidence sufficient" to show that his "protected activity was the likely

reason for the adverse action" nor claimed that Defendant's explanation for his termination was pretextual. *Zanders v. National R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990) (internal quotations omitted). That is, Plaintiff did not explain why he believed that Defendant fired him for reporting the discriminatory comments. And he did not allege how Defendant's assertion—that it terminated him because he committed a safety violation and because of his disciplinary history—was not the true cause of his termination. As a result, Judge Christoff opined that this Court should grant Defendant summary judgment on Plaintiff's retaliation claim. (ECF No. 52 at PageID 544.)

### C.      Defamation

Next, Judge Christoff found that Plaintiff's defamation claim could not move forward because the statute of limitations had run. (*Id*.) In Tennessee, the statute of limitations for oral defamation is six months. Tenn. Code Ann. § 28-3-103; *see also Leach v. Taylor*, 124 S.W.3d 87, 91 (Tenn. 2004). Because any defamatory language took place in late 2016, or early 2017, and Plaintiff sued here in January 2020, the statute of limitations barred him from bringing a defamation claim. (ECF No. 52 at PageID 544.) Defendant therefore was entitled to summary judgment. (*Id*.)

### D.      Breach of Employment Agreement

Likewise, Plaintiff did not allege enough facts to push his breach of employment agreement claim past the summary judgment stage. (*Id*. at PageID 544–45.) As Judge Christoff noted, Plaintiff and Defendant did not have a written employment contract. (*Id*. at Page ID 545.) And, in Tennessee, the law presumes an at-will employment arrangement absent evidence to the contrary. (*Id*.) And because Plaintiff did not show that he signed a contract or that he was not an at-will employee, he failed to assert a claim against Defendants for terminating him from his at-

7

will position.  (*Id.*)  What is more, because he did not identify his duties as foreperson, he could not make a claim against Defendant for limiting him during his employment.  (*Id.*)

      **E.**     **Conversion of Retirement Funds and Overtime Pay**

Lastly, because it was undisputed that Plaintiff never participated in Defendant's 401K plan, and never had any of his pay directed to the 401K plan, Judge Christoff found that this Court should grant summary judgment for Defendant on this claim.  (*Id.*)  The same goes for Plaintiff's overtime conversion claims.  Because Plaintiff was a salaried employee, and because the statute of limitations on unpaid overtime conversion had run, Judge Christoff found that Defendant was entitled to summary judgment.  (*Id.*)

## DISPOSITION

Federal Rule of Civil Procedure 72(b)(2) states that "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  But if neither side objects, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72(b) advisory committee notes.

Here, neither party objected to the R&R.  And after a thorough review of the Magistrate Judge's findings and explanations, the Court finds no clear error on the analysis of the summary judgment motion.  In fact, having reviewed the record thoroughly, the Court finds that the Magistrate Judge's analysis of Defendant's summary judgment motion is correct.  The Court therefore **ADOPTS** the R&R, **IN PART**, on the summary judgment recommendation.  The Court therefore **GRANTS** Defendant's Motion for Summary Judgment and **DISMISSES** with prejudice Plaintiff's complaint.  Judgment will follow entry of this order.

II.     **Motion to Dismiss**

Because the Court agrees with Judge Christoff's findings on the summary judgment motion disposing of this matter, it need not opine on the R&R's motion to dismiss analysis.  That said, the Court will consider the doctrine of judicial estoppel.

"Judicial estoppel is an equitable doctrine to be invoked by this court at its discretion." *Pennycuff v. Fentress County Bd. of Educ.*, 404 F.3d 447, 453 (6th Cir. 2005).  The doctrine exists to "preserve the integrity of the courts" and to prevent parties from "abusing the judicial process through cynical gamesmanship."  *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (internal quotations omitted).  To accomplish these goals, courts evoke judicial estoppel to stop a "party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

And the Supreme Court outlined a three-part inquiry for courts to evaluate whether to apply the doctrine—(1) was the party's latter established position "clearly inconsistent with its earlier position," (2) did the party persuade the a court to "accept [its] earlier position," and (3) would the party seeking the inconsistent position "derive an unfair advantage or impose an unfair detriment on the opposing party"—but it noted that these factors were not "inflexible prerequisites or an exhaustive formula."  *Id*. at 750–51.

This doctrine can also apply when a litigant prevails on a position in a different case, or before a different court, and then asserts an inconsistent argument in a new proceeding.  *See Davis v. Fiat Chrysler Automobiles U.S., LLC*, 747 F. App'x 309, 313 (6th Cir. 2018).  A common example of this occurs after a debtor files for bankruptcy.  In that context, the bankrupt party fails to disclose potential claims against third parties at the start of the case.  And the

Bankruptcy Court issues a bankruptcy plan based on the earlier filing.  Then, the bankrupt party later sues a third party for money damages.  *See, e.g., id.*; *Williamson v. USF Holland, LLC*, 2019 WL 1354267 (E.D. Mich. Mar. 26, 2019); *Bone v. Taco Bell of Am., LLC*, 956 F. Supp. 2d 872 (W.D. Tenn. 2013).

Considering claims of judicial estoppel in these situations, courts within the Sixth Circuit apply a slightly modified version of the Supreme Court's inquiry in *New Hampshire* and ask, (1) did the plaintiff argue a contrary position to the one "asserted under oath in the bankruptcy proceedings," (2) did the Bankruptcy Court "adopt[ ] the contrary position," and (3) did that omission "result from mistake or inadvertence."  *White*, 617 F.3d at 478.  In essence, judges may apply judicial estoppel to a plaintiff's claims because—although the suit is speculative, and the debtor may never recover damages in the future—the Bankruptcy Court relied on the debtor's statements when forming the bankruptcy plan and may have changed its approach had the debtor disclosed the potential suit.

The first two steps of this inquiry are straightforward; courts evaluate the plaintiff's bankruptcy petition to see if they mentioned the potential claims and then verify that the plaintiff failed to amend the petition before the Bankruptcy Court issued the plan.  The third step, however, takes more contemplation.  Historically, at the third step, courts in the Sixth Circuit asked whether the then debtor (1) "lacked knowledge" of the "undisclosed claims," (2) "had a motive" to conceal the claims, and (3) provided evidence pointing to "an absence of bad faith." *Id*. at 478; *see also Kimberlin v. Dollar Gen. Corp.*, 520 F. App'x 312, 315 (6th Cir. 2013).

And while this three-step approach helps separate those engaging in "cynical gamesmanship" from the genuinely mistaken plaintiffs, there is a danger that courts could prematurely dismiss an action without developing much of a record about the plaintiff's motives.

Take for example a pro se plaintiff who files Chapter 13 Bankruptcy without understanding the implications of failing to disclose a potential later lawsuit. Following Sixth Circuit precedent, a court may dismiss the suit by applying judicial estoppel even if the debtor later tries to fix their mistake. *See, e.g., White*, 617 F.3d at 481; *Newman v. University of Dayton*, 751 F. App'x 809, 814–15 (6th Cir. 2018).

Of course, it is reasonable for courts to snuff out deception and manipulation, but employing judicial estoppel too hastily—or without clear cause—could instead stunt the inherent "truth-seeking function of the court." *Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004).

To avoid a miscarriage of justice, some courts have adjusted their judicial estoppel approach in the bankruptcy context. For example, the Eleventh Circuit, sitting en banc, broadened the factors that its courts should consider before employing the doctrine. *Slater v. United States Steel Corporation*, 871 F.3d 1174 (11th Cir. 2017). The court had endorsed a standard like the Sixth Circuit's, but it now holds that courts should consider more information. "[A] district court should look to all the facts and circumstances of the case to decide whether a plaintiff intended to mislead the court because that question is separate from and not answered by whether the plaintiff voluntarily, as opposed to inadvertently, omitted assets." *Slater*, 871 F.3d at 1186.

The *Slater* court explained its reasoning:

"[A] plaintiff may have failed to disclose a pending lawsuit because he did not understand the disclosure obligations. It is not difficult to imagine that some debtors, particularly those proceeding pro se, may not realize that a pending lawsuit qualifies as a "contingent and unliquidated claim" that must be disclosed on a schedule of assets. Although the question asking for a list of "all suits and administrative proceedings to which the debtor is or was a party" seems more straightforward, as Slater's testimony shows, it nevertheless may be

> misunderstood.  So it makes sense that a district court should look beyond a
> plaintiff's omission in determining whether the plaintiff intended to misuse the
> judicial process."

*Id*. (footnotes excluded).  So now, the Eleventh Circuit focuses on a broader array of factors than

the Sixth Circuit, including:

> plaintiff's level of sophistication, whether and under what circumstances the
> plaintiff corrected the disclosures, whether the plaintiff told his bankruptcy
> attorney about the civil claims before filing the bankruptcy disclosures, whether
> the trustee or creditors were aware of the civil lawsuit or claims before the
> plaintiff amended the disclosures, whether the plaintiff identified other lawsuits to
> which he was party, and any findings or actions by the bankruptcy court after the
> omission was discovered

*Id*. at 1185.

That court adopted this more thorough standard permitting a district court to consider any

fact that it deemed relevant.  *Id*. at 1185 n.9.   The Eleventh Circuit provided three justifications

for this change.  First, this standard "ensures that judicial estoppel is applied only when a party

acted with a sufficiently culpable mental state" and fixes the underinclusive nature of the

Eleventh Circuit's previous inquiry.  *Id*. at 1185–86.  Second, it permits courts "to consider any

proceedings that occurred in the bankruptcy court after the omission was discovered"—

"arguably a better way" of ensuring the integrity of proceedings.  *Id*.  Third, it rejects "a one-

size-fits-all approach" and limits the doctrine, making it "more consistent with [its] equitable

principles."  *Id*.

Applying this more thorough approach would likely yield a more equitable result.  The

record here shows only that Plaintiff failed to disclose his potential suit to the Bankruptcy Court

and never tried to amend his plan.  But it is hard to say that alone proves he intended to mock the

judicial system.  Aside from his bankruptcy petition that he filed under oath, there is no other

evidence that Plaintiff understood the disclosure requirements or even that he now knows he

should have included them and should have gone back to amend his bankruptcy plan.  Perhaps one way to ensure that plaintiffs understand this responsibility would be to hold a hearing on the matter after learning of the inconsistency, or order that the plaintiffs amend their bankruptcy plans, before moving forward with judicial estoppel—that way courts can better understand which parties are acting in bad faith.

At any rate, this Court Adopts the R&R in part and **GRANTS** summary judgment for Defendant.  So, the Court need not rule on the question of judicial estoppel.

**SO ORDERED**, this 28th day of September, 2021.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE

13